# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **KELLY MICHAEL VELAYAS, on behalf** | § | |
| **of Minorities of the State of Texas,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:23-CV-00891-RP-SH** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| *Defendant* | § | |

## ORDER AND REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff's Complaint (Dkt. 1) and Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 2), both filed July 31, 2023. The District Court referred this case to this Magistrate Judge for disposition of the Application and Report and Recommendation as to whether the case should be dismissed as frivolous under 28 U.S.C. 1915(e), pursuant to Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas and the Court Docket Management Standing Order for United States District Judge Robert Pitman. Dkt. 3.

## I.  Background

Plaintiff Kelly Michael Velayas brings this purported class action civil rights lawsuit "on behalf of minorities . . . in the State of Texas." Complaint, Dkt. 1 at 1. Plaintiff names as defendants the State of Texas, Texas Governor Greg Abbott, and Texas Attorney General Ken Paxton.[1]

---

[1] On July 14, 2023, Abbott appointed Angela Colmenero to serve as Interim Attorney General for the State of Texas pending the Texas Senate's resolution of articles of impeachment filed against Paxton. *Consumer Data Industr. Ass'n v. Texas ex rel. Paxton*, No. 21-51038, 2023 WL 4744918, at 1 n.1 (5th Cir. July 25, 2023) (per curiam).

Plaintiff seeks "the creation of . . . autonomous (independent communities) for all minorities . . . of  – 2,000 acres each . . . within five miles of the city center" of 32 cities in Texas, and a "[t]ransfer" of that land "to the NAACP . . . with oversight by President Barack Obama and The Honorable Minister Louis Farrakhan – whom will be governing authorities of each community." *Id.* at 2.[2]

## II.    Legal Standard

In 1892, Congress enacted the *in forma pauperis* statute, now codified at 28 U.S.C. § 1915,

> to ensure that indigent litigants have meaningful access to the federal
> courts. Toward this end, § 1915(a) allows a litigant to commence a civil
> or criminal action in federal court *in forma pauperis* by filing in good
> faith an affidavit stating, *inter alia*, that he is unable to pay the costs of
> the lawsuit. Congress recognized, however, that a litigant whose filing
> fees and court costs are assumed by the public, unlike a paying litigant,
> lacks an economic incentive to refrain from filing frivolous, malicious,
> or repetitive lawsuits.

*Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (citation omitted). To prevent such abusive litigation, § 1915(e) authorizes a federal court to dismiss a claim filed *in forma pauperis* "at any time" if it determines that the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Dismissals on these grounds often are made sua sponte before process issues, "so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke*, 490 U.S. at 324.

A claim is frivolous when "it lacks an arguable basis either in law or in fact." *Id.* at 325. A complaint lacks an arguable basis in law "if it is based on an indisputably meritless legal theory,

---

[2] Plaintiff filed a similar lawsuit earlier this year on behalf of all "African American Citizens" requesting essentially the same relief. *See* Dkt. 1 in 1:23-CV-00493-RP-SH. In that case, this Magistrate Judge issued a Report and Recommendation to dismiss Plaintiffs' Complaint under 28 U.S.C. § 1915(e) for lack of jurisdiction. *Id.* at Dkt. 5. The District Court adopted the Report and Recommendation, dismissed Plaintiff's case, and entered a final judgment. Dkts. 20, 21.

such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). A complaint lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing "fanciful," "fantastic," and "delusional" allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28)). "Some claims are so insubstantial, implausible, or otherwise completely devoid of merit as not to involve a federal controversy. Federal courts lack power to entertain these wholly insubstantial and frivolous claims." *Atakapa Indian de Creole Nation v. La.*, 943 F.3d 1004, 1006 (5th Cir. 2019) (cleaned up).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, a plaintiff must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice to state a claim on which relief may be granted. *Id.*

### III.    Plaintiff's Motion for *In Forma Pauperis* Status

Plaintiff asks to proceed in this Court without prepaying the filing fee because he "is unable to pay the costs of these proceedings." Dkt. 2 at 1.

### A.  Plaintiff's Financial Status

Under §1915(a), the district court first looks to the plaintiff's financial status to determine whether he cannot pay the filing fee. *Mitchell v. Sheriff Dep't.*, 995 F.2d 60, 62 n.1 (5th Cir. 1993). A plaintiff need not be "absolutely destitute to enjoy the benefit of the statute." *Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). The Supreme Court has stated that "an

affidavit is sufficient which states that one cannot because of his poverty 'pay or give security for the costs and still be able to provide' himself and dependents 'with the necessities of life.'" *Id.* To determine whether a particular order causes "undue financial hardship," a court must examine the financial condition of the *in forma pauperis* applicant. *Prows v. Kastner*, 842 F.2d 138, 140 (5th Cir. 1988). "This entails a review of other demands on individual plaintiffs' financial resources, including whether the expenses are discretionary or mandatory." *Id.*

Plaintiff states in his Application that he is a self-employed contractor who earned $40,000 in the past year and has $6,800 in his savings account. Dkt. 2 at 1-2. Plaintiff also states that his regular monthly expenses are $1,908, and that he has $30,000 in outstanding debts. *Id.* at 2. Based on these representations, the Court finds that Plaintiff cannot pay the filing fee without experiencing undue financial hardship. Accordingly, the Court hereby **GRANTS** Plaintiff's Application for *in forma pauperis* status.

Because Plaintiff has been granted leave to proceed *in forma pauperis*, the Court is required by standing order to review his Complaint under § 1915(e) to determine whether it should be dismissed for frivolousness or failure to state a claim, or seeks monetary relief against a defendant who is immune from such relief.

### B.  Review of Plaintiff's Complaint under § 1915(e)

Federal district courts are courts of limited jurisdiction and may exercise only such power as is expressly conferred by the Constitution and federal statutes, "which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). An Article III court must assure itself of its own jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States" and over civil cases in which the

amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. U.S. Const. art. III, § 2; 28 U.S.C. §§ 1331, 1332. It is to be presumed that a case lies outside this limited jurisdiction, and the burden of establishing the contrary rests on the party asserting jurisdiction. *Kokkonen*, 511 U.S. at 377.

### 1. **Standing**

Article III of the United States Constitution confines the federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2. For a case or controversy to exist under Article III, the plaintiff must have a "personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To establish standing, a plaintiff must show (1) that he suffered an "injury in fact" – an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that it is "likely" rather than merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "If any one of these three elements—injury, causation, and redressability—is absent, plaintiffs have no standing in federal court under Article III of the constitution to assert their claim." *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 & n.6 (2016). Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Id.*

The Court finds that Plaintiff fails to show he personally suffered an "injury in fact." *Lujan*, 504 U.S. at 560. "At an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian Coll. v. Americans United for*

5

*Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (cleaned up). Plaintiff purports to bring this action "on behalf of all minorities, and all that stand against racial prejudice" in the State of Texas and seek public land as reparations. He does not allege that he personally suffered an injury. "But the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972). That a suit may be a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo*, 578 U.S. at 338 n.6 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)); *see also Sosna v. Iowa,* 419 U.S. 393, 402-03 (1975) (stating that there must be a named plaintiff who has an Article III case or controversy when a complaint is filed).

Plaintiff also fails to plead a redressable injury. To meet the "redressability" prong of the standing inquiry, a plaintiff seeking injunctive relief must show that the defendant has authority to provide the relief requested. *Okpalobi*, 244 F.3d at 427. Plaintiff asks the Governor and Attorney General of Texas to transfer 32 tracts of land to the NAACP to create independent minority communities governed by former President Barack Obama and Louis Farrakhan. Under the United States Constitution, however, only the federal government has the power to recognize governments or create new states and territories. *See* U.S. CONST. art. II, § 3 (stating that the President "shall receive Ambassadors and other public Ministers"); *id.* at art. II, § 2, cl. 2 (stating that the President "shall have Power, by and with the Advice and Consent of the Senate, to make Treaties . . . and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors"); *id.* at art. IV, § 3 (granting Congress the power to admit new States and the "Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property

belonging to the United States"); *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 32 (2015) (holding that the President of the United States has the exclusive power to acknowledge "the legitimacy of a state or government and its territorial bounds"); *Am. Ins. Co. v. 356 Bales of Cotton*, 26 U.S. 511, 542 (1828) ("The Constitution confers absolutely on the government of the Union, the powers of making war, and of making treaties; consequently, that government possesses the power of acquiring territory, either by conquest or by treaty."). Because Defendants have no power to redress the injuries alleged, Plaintiff has "no case or controversy" with these Defendants that will permit him to maintain this action in federal court. *Okpalobi*, 244 F.3d at 427.

### 2.  Sovereign Immunity

Even if Plaintiff had standing to bring this suit, his claims are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Eleventh Amendment codified the sovereign immunity of the states. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). "A State may waive its sovereign immunity at its pleasure, and in some circumstances, Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 253-54 (citation omitted). This jurisdictional bar applies whatever the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Accordingly, Plaintiff's claims against the State of Texas should be dismissed.

Plaintiff's claims against Abbott and Paxton are also barred by the Eleventh Amendment. Sovereign immunity applies not only to actions in which a state itself is the named defendant, but also to actions against state agencies and instrumentalities. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "[A] suit against an arm or instrumentality of the State is treated as one against the State itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1293 (2017). Similarly, lawsuits brought against employees in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent," and they also may be barred by sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

For the exception to sovereign immunity set out in *Ex parte Young*, 209 U.S. 123 (1908), to apply, "the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Young*, 209 U.S. at 157). Plaintiff's claims cannot proceed against Governor Abbott or Attorney General Paxton because he alleges no connection between their actions and complaints about racial prejudice and they have no power to provide the relief requested. Accordingly, Plaintiff's claims against Abbott and Paxton are barred by sovereign immunity.

Because Plaintiff alleges no viable claims, his case should be dismissed as frivolous under 28 U.S.C. § 1915(e)(2). Service on Defendants should be withheld pending the District Court's review of these recommendations. If the District Court declines to adopt the recommendations, service should be issued on Defendants at that time.

## IV.  Order and Recommendation

For these reasons, this Magistrate Judge **GRANTS** Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 2) and **RECOMMENDS** that the District Court **DISMISS** this case under 28 U.S.C. § 1915(e)(2)(B).

It is **ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## V.  Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on August 21, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE